Case number 21-3543, United States of America v. Antonio Wynn. Oral argument is not to exceed 15 minutes per side. Mr. Drostek, you may proceed for the appellant. Thank you. Good afternoon, your honors, and may it please the court. We're asking the court to reflect the realities of criminal proceedings when deciding how to apply section 404 of the And we're basing that on precedent and also consistent with the text and the purpose of both the First Step Act and the Career Offender Guideline. And starting with the Career Offender Guideline, section 4B1.1 of the Sentencing Guidelines, that depends on the statute of conviction, of course, which is related to the amount of drugs involved but isn't identical. And I would like to take a moment just to get into what I mean by that. Well, could I stop you there? And just, I find this case quite puzzling, given that a prior panel arguably, you know, did what you're asking here, which said, you know, the elements of conviction are what matter and confirmed for Judge Nugent that indeed he had won the argument once already. It is true on remand, he didn't calculate the advisory range the way you would have wished, but he certainly had everything in front of him. In fact, you know, I've got your brief below, you know, it's not making legal arguments. No one's, the briefing isn't debating eligibility. The briefing is debating whether he should get a reduction. That's how I read the briefs below. I understand the arguments about, you know, the 10th, the 3rd, the 11th, and arguments from our precedents, but Boulding was cited by the prior panel and I find myself, I mean, Mr. Grostick, I'm asking you this question so directly because I have so much respect for you and I know you'll understand the question, but I just find myself saying, this doesn't seem like a great vehicle for clarifying this debate because I feel like we have a district court judge who really has understood the key issues and maybe he should have recalculated the guideline range differently, but boy, I just feel like if that's an error, it's harmless given everything else he said. So that, I'm just curious how you react to that, essentially you already won. He was told he, you know, you're wrong, he is eligible, and yet he still exercised his discretion for better or worse the way he did. Yes, Your Honor, if I understand correctly, especially focusing on whether the error is harmless or not, in that context, I'd point to both in this case and in general the kind anchoring effect that the guidelines can have in two ways. One is, obviously it's, in both this case, we can see that the district judge said, well, this is the guidelines range, I would have sentenced at the bottom of that guidelines range again, like I did last time, and so we don't really have a record yet of what the judge would have done if he'd understood that the guidelines range should have been lower, and both in general, that courts start with the need to explain any variance from the guidelines range from there as a matter of sentencing discretion. Now, obviously that's slightly different in the first step back context, but in Boulding and subsequent cases, this court has clarified that that's still at least somewhat the role of the district judge to calculate the guidelines correctly, that's one of Boulding's holdings, and then explain, give a reasoned decision for why or why not the court is obviously, as the court well understands, is that the court erred in that first step in whether it calculated the guidelines correctly. Now, I do think the briefs below show that we did have a debate on really two aspects. One was, what's the correct guidelines range, which was a legal issue, and the second was based on all the other factors. Your brief below doesn't have any cases along the line. I mean, the argument in front of us is not the argument that Judge Nugent saw. I think that's fair to say. I do think that's fair to say, Your Honor, and I would note that, well, what the record does reflect is that Judge Nugent issued his order the day after the government filed its response brief without an opportunity for our position to reply. I won't go beyond the record about what was happening in my office during that day, but no, I actually will. I was drafting a reply. Well, can I ask you a slightly different way of thinking about the case, which I don't think is reflected in the 10th, 3rd, or 11th circuit decisions, but again, goes to this harmless error thing where I understood the key point of those cases is an eligibility point, and that's the thing that you've got to be careful about holding them to their prior plea and statements along quantity lines. But the thing you could see, or at least you could sense Judge Nugent doing, and again, the argument you've made here was not made in front of him, so it's hard to know exactly what he would have thought, but he certainly doesn't seem like someone who was going to forget the 44 grand. So in other words, and I don't think any case law says district court judges have to agree that the 44-gram agreement didn't exist. I can't see that. I can see cases saying you can't use that to deny them eligibility, but you're allowed as a district court judge to say, hey, in my courtroom, we take this stuff pretty seriously, and I can't just forget that, and it's going to affect what I do. So even if I calculate the guideline range without the 44 up or down, am I wrong about whether there's cases on that point? Two responses, Judge. One, I don't think you're wrong. I do think Boulding and Burris also out of the Tenth Circuit, which we've cited in our reply, do speak directly to the point of a miscalculated guidelines range is not harmless there, but don't speak to, certainly don't instruct the lower court. On remand, you cannot consider the admitted drug amount or any drug amount that was found by the judge in deciding whether and to what extent to exercise the discretion. I agree with that. I would say, though, that in a world where we go back and start from the beginning, what's the proper guidelines range? It's the lower guidelines range. If the government had come back and said, well, Judge, remember, though, that he admitted this guidelines range, it's at that point, I think on reply, where if that was the government's contention, and I think it's fair to say that the government might raise that, we then may say, listen, Judge, we'd like you to understand that, again, the realities of criminal proceedings that Boulding lays out in great detail. This case may have proceeded quite differently. We may have tried to litigate at the plea colloquy or at sentencing before that happened, whether 44 grams was the correct amount. In this particular case, drugs were found in two different locations in a car. In cases in general, that can also happen, though. Someone can be charged with drugs found on them and also in a compartment, something like that. That happens quite frequently. And assuming that the Fair Sentencing Act was in effect at the time of the offense, the case may have proceeded quite differently. The charge may have been different, what we contested, what we tried to negotiate. I think, counsel, we would probably all agree that this is of the difficulties in this case. What concerns me the most is not that we can glean from the and that was what he was going to do and then call it 3553 analysis. The problem for me is this emphasis on the 11th and the Third Circuit cases, which really take back up in a different method the Boulding decision and seem to me to be at odds and differ from it. So I am concerned about that first step and the fact that I think you cite DeCamp, you cite a number of the laws that show us the importance of having an independent ascertainable standard for making these decisions. So help me understand why we wouldn't just say that the 11th and Third Circuit eligibility cases have already been resolved by Boulding, as Chief Judge Sutton indicates, and that the key here is the statute of conviction alone, period. And doesn't that resolve this issue? Well, Judge, that's certainly our position. And I do believe it's consistent with DeCamp and with Broadway out of the Tenth Circuit. And that's my emphasis on the realities of criminal proceedings is that the statute of conviction is both what Section 4B1.1 points to in the guidelines, it points to the statute. It doesn't point to a particular drug amount. And again, what gets contested, what gets litigated, what gets agreed to before a plea or after a plea, and what gets contested before sentencing is greatly affected by the statutory background. And that's why this argument, I have to say, I struggle with it. I'm not sure I buy it. Here, it does have consequences. 44 is below 50. So you got to think about it in both directions. It's not just that 44 is over five, i.e. I don't care. 44 had value, it was below 50, which was at the time, the next step. So I don't know, it strikes me as a very dangerous road to go down that these things don't count. Now, whether they count for sentencing guidelines, that's a slightly different point. But the idea that, oh, well, gee, we know that people tell untruths all the time. And they only count if they were at times where they were material is a very dangerous road to go down. Well, all I would say to that, Your Honor, I'm certainly not contending that anyone is telling untruths. I would say, though, that de Camp specifically did point out that when there's little incentive to contest anything but an element, that there are countervailing factors that a defendant and a defense attorney may take into account. And the Supreme Court said they may have good reason not to contest those things if they don't affect the actual elements of the offense. It's not simply a matter of saying, oh, I'll admit to this because it doesn't matter, but I know it's not true. There are times when someone doesn't know what an amount would be. And they're accepting an agreement to the elements of the offense because that's what matters at the time. And they wouldn't know that 12 years later, here almost 15 years later, that not contesting those at the time superfluous facts would now come back to bite them. And I see my time is up. I'd reserve the balance for rebuttal unless there's a further question, which I do believe Judge Davis, I'm sorry. I do have a question. And I'm sorry that the time has expired. But let me ask you, should we not care that the admission that was here is not simply an admission in the context of a plea agreement where we have a defendant who's agreeing to a factual basis, but rather the admission here was in the context of a stipulated amount for purposes of reducing the charge because he was initially charged with a 50 grams or higher, which of course is the higher level. And the amount that he agreed to the 40, well, I don't want to misstate what it is, but it was over 44 grams was actually an amount that would be both above 28 grams and above five grams. And it was in the context of the charge, i.e. the offense of conviction. It was your honor, obviously in the context of reducing the charge down. I don't think it makes a difference to the court's analysis on the legal issue. And specifically because again, it doesn't have any incentive to try to fight for something below 28. He would have an incentive to try to vote to either in plea negotiations or to litigate something below five. But the difference between something over 40 and something over 28 is obviously far different from five. And so in this context, yes, as the government and the defense worked out this agreement, it was a stipulation to an amount. It could have just as easily been a stipulation to five grams or more. And that again, there's something to the whim of what happened in this case, that it could have been simply five grams or more. It would have been the exact same result then, but it makes a big difference now. And again, I'd reserve the balance for rebuttal. Thank you. All right. Thank you, Mr. Grostek. You'll get your full rebuttal and we'll hear from Mr. Ranke. May it please the court. It does matter to this analysis that the 44.7 grams was stipulated as part of the plea notice. It was negotiated down from the higher level at the time to the intermediate level. And that's the same as essentially a jury finding. But you would concede, wouldn't you counsel, that 44.7, that is not an element of the charge that he was convicted of, correct? Well, he was convicted of A and then the penalties would be the amount. But the element was what he would have been charged with and convicted of was possession over five grams. Isn't that correct? That's correct. And then the penalty section kicks in. So help me understand why the 11th and Third Circuit's analysis of an eligibility question that we already resolved differently in Boulding would lead to the outcome that you want. I don't really think that the 11th and the Third Circuit's really decided that so much differently than Boulding. I mean, they found eligibility just like this court did in Boulding. They just focused on the fact that the court was bound by the prior drug amount, given that any reduction must be applied as if the sections two and three of the Fair Sentencing Act were in place. But didn't they hold that, wasn't there holding that he was not eligible? Wasn't that the holding of both those cases? Well, in Jones, it's a little more complicated because there were four defendants. Yes. Agreed. They did send two back. I would agree with that. Right. They sent two back because they found there was ambiguity as to whether there were eligibility. The other two, they found that, I think, Jackson, I think, was 287 grams. And Jones was kind of a Len argument where the jury hadn't found it. And the 11th Circuit said that this wasn't, you know, Len and Apprendi didn't really come into play because they weren't going to increase either defendant's sentence based upon you know, judge fact findings. They're going to decrease the sentence. So it just seems like to insert this argument as made by you creates a whole lot of moving parts. I think your opposing counsel would say that it punishes for making a resolution that you had no incentive to challenge below. It requires you to look back in a way that predicts or claims what goes on, all of which seem to me to be at odds with the decision in bolding that creates an easily applicable standard, period. It is the statute of conviction alone. Well, that doesn't mean that this judge loses his discretion. He's still got the 3553 factors and we might quibble over what he said about those. I don't think he made a firm decision on that. My concern is this concept that seems to me to be at odds with our published precedent. What is your take on that? Okay, I don't think it is at odds with bolding. Yeah, back in when this court dealt with the last appeal, the career offender and then, well, not the career offender, but the appeal prior to this one, the court cited bolding and bolding was to eligibility. And that's, it's a very clear rule as to eligibility and that makes sense. What do you think is different about that appeal from this one? I'm really struggling. I thought these two cases look very similar. Like the debate then was the judge didn't think he was eligible. This court reverses, says, well, no, he was, seeming to, you know, cites bolding, seeming to say it's the elements of the conviction, but then says, you know, we are not the ones with discretion about whether to do this, the judges and remands for this discretionary determination. I don't see a whole lot of difference, Your Honor. I think the key is under bolding is eligibility. And here the court found he was, that Mr. Wynn was eligible for the sentencing reduction and just chose not to apply it because he was still in the intermediate crack cocaine range, even after the Fair Sentencing Act and the First Step Act. Aren't you asking for more than that? I mean, isn't your argument that we need to look beyond bolding and accept the arguments and analysis of the 11th and 3rd Circuit at odds with the 10th and 3rd Circuit? If your argument is over the 3553 discretionary rights of judges, you and I may be on the same page, but we're not on the same page for me. Just to be clear, this whole debate does not appear anywhere in the briefing below. If Judge Nugent were listening to this, he would say, boy, that's a case I never saw. Am I right about that? Perhaps that's the problem. Am I not right about that? No, that's correct. You're correct. So the whole thing is just, it's just every district court judge's nightmare that they do one thing, they don't get what they want, and they suddenly develop this legal argument. But go ahead, answer the question. Well, I still don't think we're at odds with bolding, Your Honor. I mean, bolding was eligibility. Bolding went to eligibility for a sentencing reduction and Judge Nugent found he was eligible. And then he applied the Fair Sentencing Act and found that he was still in the same range, the same intermediate crack cocaine range, and so nothing had really changed. And with Broadway, even Broadway acknowledged, Broadway has kind of based itself, it discussed a lot of the reasons behind the Fair Sentencing Act. And it also discussed, we should use the offensive conviction because that was a thing that everybody knew that was not open to debate. And I think that's kind of what you're getting at with bolding. But even Broadway, with Broadway, this is a little different. It's not just that he pled guilty to he pled guilty to five or more grams, absolutely. But then he also stipulated to an amount. I'm really embarrassed that I don't know this after 20 years, but you have to acknowledge some of this stuff is complicated and not intuitive. Remind me this basic point, I guess maybe the question goes to both of you. When you're doing a guidelines calculation, it's relevant what the statute of conviction is, but it's also quantity is also relevant. So pretend that you have these facts, but we're just doing an initial sentencing and initial. So you have a plea to this exact statute. And let's not call it a stipulation. Let's call it evidence that he was really trafficking 44 grams, okay? That that was the amount. Could that amount enter into the guidelines calculation? No, I think this was the whole point about judge found facts and that judges are allowed to find quantities and talk about even uncharged conduct is part of the advisory guidelines calculation, not 3553, but as part of the advisory. Am I right or am I just misremembering? No, I believe that's correct. And it also then goes to whatever the statutory maximum is as to deciding the range. So why, again, I'm trying to figure out why this all makes a difference. If judge Nugent would have had authority to consider the 44 grams. Well, your honor, it's our position that he did have that authority and that's why that we don't feel that there's an error here. Well, but isn't the problem that I'm struggling with is if we went to the 3553 factors and it's evidence of the way he approached this case, didn't he say that he would not depart downward from his calculated guideline range because of WINS rehabilitation? But the problem is his calculated guideline range, isn't it? The not the hundred and eighty eight. I've forgotten exactly what the other two hundred and thirty five. Yeah. Yeah. I mean, isn't that the problem is that he's operating from the assumption that that the that not from the statute of conviction alone as Boulding instructs, but from his assumption that he can select that he remains with that guideline range rather than the guideline range is defined by the statute of conviction. But Boulding refers to statute of conviction for eligibility, which the judge agreed he was eligible. It's we're past the eligibility point where I don't know that Boulding controls anymore. Once we're once once he's found once Mr. Wynn is found eligible by Judge Nugent, he's complied with Boulding at this point. Has he complied with Boulding if he has chosen to use determinative figures that are not those of the statute of conviction alone? Doesn't that open all of the arguments your opposing counsel made about how do you determine this? How do you look back? Were you incentivized by all of the undergirding factors of Boulding? Were you incentivized below to challenge the 44 if he pled guilty and stipulated to a drug like weight? But how would it play out if he had gone to trial and been convicted by a jury? Another moving part in this. And if the jury could find the elements of the crime, wouldn't the this government's approach then create this real disparity between defendants that pled guilty versus those that went to trial? I mean, it's that sort of moving parts that seems to me or I felt was an undergirding of Boulding by keeping the rule that you only look to the statute of conviction alone, which is the wording. But again, isn't that eligibility? And he was incentivized. Okay, when you look at, okay, maybe he was incentivized, as you put it, to plead to whatever he pled to, but he was incentivized because it was under 50 grams. It reduced him from at the time from the level into the intermediate level where he remains to this day. I'm struggling with both the undergirding of Boulding and the undergirding of the First Step Act. And if the conviction alone is not the issue, then what happens here, it seems to me, is a lot of the intent of the First Step Act to enable reductions of sentences is now being put aside by leaving them right in the arena they were in before the Fair Sentencing Act was found to be retroactive by the First Step Act. I think the Fair Sentencing Act, it requires that sections two and three be applied as if those sections applied at sentencing. And that's, I think, what the judge did here. He applied the different thresholds, the higher thresholds, but he wasn't required under Boulding to ignore the 44.7 grams. He was required under Boulding to ignore the 44.7 which he did after the remand from this court. And there's also a disparity if we go with this approach to people that were sentenced after the enactment of the Fair Sentencing Act because they would be in a different position. They would be in a worse position than had they been sentenced before like Mr. Wynn was. So there's a disparity argument that goes the other way along those lines. Mr. Reinke, I have a question and this is really just more for clarification. While we're talking about the statute of conviction, it's not clear to me what the government, what your position is on what the statute of conviction is. Is it section B1B3? Is it 841 USC B1B3? Or is it B1C as the detectable amount based upon the fact that the charge was five grams or more? Which is it? We're arguing 841 B1B3. The five grams or more. Okay, I see my time's up. If there are no further questions, I'm done. All right, thank you, Mr. Reinke. Mr. Grostek. Thank you, Judge. And I do want to start again with the kind of harmless error general question. I believe Judge Sutton referred to the suddenly developing legal argument on appeal, which I understand is a concern for district judges and on appeal. I do want to note again on remand, without introducing extra record evidence again, but on remand, there is one way reading the remand order that is consistent with simply there's a lower guidelines range because you look to the statute of conviction. The government in response in its brief said no, the same guidelines range applies. And then the next day without an opportunity for reply, the district judge issued its order. So it was not developed. That's absolutely true. There's not a single legal citation in the opening brief. All right, there's just none. It's not bolding. There's no argument about bolding. There's nothing there. But just help me with this point. Why does this make a difference in a slightly different way? You would have been allowed to consider the 44 grams, not for purposes of eligibility. All right, that's gone. But you would have been not necessarily required, but you would have been allowed to consider the 44 grams for purposes of calculating the sentencing guideline. Why isn't that accurate? No, that's correct, Your Honor. Okay, but then why isn't it implied that that's, you know, he looks at both briefs. They're not law briefs. They're briefs saying here's what we think the guidelines are. Here's what we think they are. He's not violating bolding at that point. He's just saying I'm sticking with the 44 grams. And I don't understand what binds him and what prevents him from doing that. That's all the case. Two points quickly, Your Honor. The first is that in this case, using the amount for guidelines, the amount actually doesn't come into play. Because it's the career offender guideline in play. The career offender guideline is based wholly on the statute of conviction. It's based on the maximum offense, the maximum penalty under the statute of conviction. So there's no way to get to the 235 range at the bottom using the 44 grams. Is that the point you're making? Only if the 44 grams is part of the statute of conviction. Because that guidelines range, that career offender guidelines range is based solely on the maximum penalty under the offense of conviction. And that's why we circle all the way back to, well, do we look to the record here to retroactively put together a new statute of conviction based on that? Or do we look to the elements of the offense for the statute of conviction? I do agree that the judge, it could still take into account, I'm not contesting, it can still take into account other things in deciding whether and to what extent. But the process here matters. And if the judge started with the lower guidelines range, then we could contest properly if the government asked to rely on something higher. We could contest that properly. And then we could evaluate on appeal whether the judge's explanation satisfied substantive reasonableness and everything else that Bouldin requires. So this would be the third time. And should we take odds? What do you think, Mr. Gross? I wouldn't take odds, Your Honor. I'm not a betting man. I would take odds. I would take odds. I would take odds. I would take odds. So the halfway house, you have eligibility for that while you're still... That's different from supervised release, right? That's correct, Your Honor. The Bureau of Prisons has the authority to designate a person to a halfway house. They're actually still serving their prison sentence, their custodial sentence. But for the last term of their, the last amount of time of their prison sentence, they can be designated at a halfway house as the facility to serve it. And so that's what's happening right now. Judge Strange, any other questions? In the perfect world, how would you have had the explanation be to the steps that were necessary for the judge to sentence Mr. Wynn? In a perfect world, I think... First of all, from the outset, from our first motion, we would set forth the correct guideline range as we've argued today. The government, if it wanted to ask for a... 185, which was... 188 or 235. 88 from the statute of conviction. Okay. And then... Yes, Your Honor. And then if the government opposed a reduction regardless, which of course is their right if they want to, then we would respond to the factors that the government argued for. Here, I imagine it wouldn't be much more than the drug amount because Mr. Wynn's post-sentencing conduct has been exemplary as we brief below. And then in a reply brief, we would be able to contest or litigate whether there were issues, whether there were all those issues that Boulding reflects about. Is this a case where those different things could have been litigated? Is this a case where it's proper to rely on that higher drug amount? And then the judge would, of course, issue his decision and he would have an appeal, right? If he sought to pursue that, then we would evaluate to what extent we thought that there were valid arguments for this court to consider. Judge Davis, any other questions? No, Mr. Grostek, I... Well, yeah, I guess I do have one question. I just want to make sure... All of my questions are just for clarification. We keep talking about the statute of conviction, which, and looking at the analysis here, is the same under both. As I understand your argument is that since the element under B1, B3 previously was for only five grams, what you would say is that the statute of conviction itself should be changed to B1C because since he only agreed to a charge of five grams, now that would just be a detectable amount and therefore the statute of conviction is different. You want us to change the statute of conviction? Yes. Your Honor, what I would say is our position is that courts properly take the elements of the offense that a person previously agreed to, compare them to the elements of the statute of conviction, to evaluate today. What's the case that does that outside of eligibility? Broadway, Your Honor. That's... I thought that was... That's not just eligibility? No. Broadway specifically talks about there's a higher drug amount involved, but because the element at the time was 50 grams or more in that case, that was a B1A drug amount. Is that a position that has been contradicted by anyone else or has anyone else considered that exact point? I did obviously research that in preparation and was surprised to find that I couldn't find a case directly addressing Broadway again. Burris in the Tenth Circuit applies Broadway, but it's in the Tenth Circuit. They were obviously... Yeah, right. It may be that because the First Step Act cases have kind of tailed off because they've been I would note that I'm afraid it may come up again if the Equal Act is passed, which has bipartisan support in both houses. Well, I like your first theory. That's a happy note on which to end. So thanks to both of you. It's always great when you have a tricky case to have two terrific lawyers. So I'm really grateful to both of you. I always enjoy seeing you and thanks as always for answering our questions and for all your work on the case. We really, really appreciate it. So Mr. Gifford, the case can be submitted.